UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES BOTTI,<br><br>Defendant. | 3:08-cr-00230 (CSH)<br><br>**MEMORANDUM**<br>**OF DECISION** |

HAIGHT, Senior District Judge:

Defendant James Botti is charged in a seven-count Indictment returned on November 6, 2008. Botti moved under Rules 8(a) and 14(a) of the Federal Rules of Criminal Procedure to sever the first three counts of the Indictment from the following four counts. The government opposed severance. The Court heard oral argument on the severance motion, along with several other pre-trial motions, on September 21, 2009. On September 22 the Court issued an Order granting the motion to sever, with an Opinion explaining the Court's reasons to follow. This is that Opinion.

I. BACKGROUND

The Indictment alleges that Botti is a resident of the City of Shelton, Connecticut, who at the relevant times "owned and operated companies that provided construction services, developed commercial sites, and leased buildings to third parties. As a developer, Botti routinely sought approval from public commissions in Shelton." Indictment ¶ 1. One of these was the City of Shelton Planning and Zoning Commission ("P & Z").

The Indictment charges Botti with participation in two separate conspiracies, with attendant substantive counts. The first of these conspiracies is alleged in Count One, captioned "Conspiracy to Defraud the Citizens of Shelton, Connecticut." The Indictment there alleges that

an unindicted co-conspirator was "an elected public official" and "a resident of Shelton," identified only as "Public Official # 1," who "owed a duty of loyalty and honest services to the citizens of Shelton in the performance of his public duties." *Id*. ¶ 2. Botti and Public Official # 1 are alleged to have conspired to "obtain money, and property, and to defraud the citizens of Shelton of the intangible right to the honest services of Public Official # 1 and other public officials." *Id*. ¶ 7. "The principal goals of the conspiracy" were for Botti

> (a) to provide Public Official # 1 with money and other benefits in an effort to induce Public Official # 1 to use his influence to help Botti obtain approval from the Shelton commissions on his land use applications; (b) to reward Public Official # 1 for using his position to further Botti's financial interests; (c) to affirmatively conceal his corrupt acts; and (d) to deprive the citizens of Shelton of the honest services of its elected and appointed officials.

*Id*. ¶ 8. This conspiracy is alleged to have begun in 2002. The last act of a Shelton Commission alleged to have been affected by the conspirators' conduct was a vote taken by the P & Z Commission on June 20, 2006. Count Two charges Botti with the substantive offense of bribery of Public Official # 1, in violation of 18 U.S.C. § 666. The count alleges that "[i]n or about June 2006," Botti "provid[ed] money to Public Official # 1" to influence him to use his position to assist Botti in the "828 Project," a matter pending before the P & Z Commission. Count Three charges Botti with mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346, by causing the Commission to mail to Botti on June 28, 2006 an envelope containing P & Z's approval of the 828 Project.

I will refer to the conspiracy alleged in Count One as "the corruption conspiracy," and to Counts One through Three collectively as "the corruption counts."

The second charged conspiracy is alleged in Count Four of the Indictment, captioned "Conspiracy to Structure." The Indictment there alleges that "[f]rom in or about June 2006 until

on or about the date of this Indictment," Botti and an unnamed co-conspirator conspired "to evade the reporting requirements" of 31 U.S.C. § 5313(a) and the regulations promulgated thereunder "by structuring, assist[ing] in structuring, and attempt[ing] to structure and assist in structuring, transactions with domestic financial institutions," in violation of 31 U.S.C. §§ 5324(a)(3) and 5324(d). Indictment ¶ 54. The "principal goal of the conspiracy was for Botti and conspirator to use large sums of cash without the existence of the cash being detected by the IRS and federal law enforcement authorities." *Id.* ¶ 55. This goal was achieved by the structuring of "cash transactions at financial institutions in amounts less than $10,001 with the intention of evading the requirement that the financial institutions file CTRs." *Id*. ¶ 57.[1] Botti and the co-conspirator repeatedly deposited or caused the deposit of "amounts less than $10,001 at various financial institutions with the intention of evading the requirement that financial institutions file CTRs." *Id*. ¶ 58. Thereafter, the cash thus deposited was distributed by checks "for the benefit of Botti," a procedure "designed to create the false impression that Botti did not have cash or access to cash." *Id.* ¶ 59. Count Four alleges as overt acts in furtherance of the conspiracy: seven deposits by Botti into his bank accounts between June 19, 2006 and July 7, 2006 totaling $49,366; eleven deposits by the co-conspirator into his bank accounts between June 20, 2006 and November 28, 2006 totaling $97,800, *id*. ¶¶ 61, 62; and transfers by check or other means from the co-conspirator's bank accounts for Botti's benefit between June 20, 2006 and January 19, 2007 totaling $92,400. *Id.* ¶ 69. Count Four further alleges that on July 14, 2006, Botti falsely represented to IRS agents that "he only had the cash that was in his pocket

---

[1] "CTRs" are Currency Transaction Reports, which financial institutions are required by Treasury regulations to use to report all cash transactions in excess of $10,000 to the IRS. CTRs are also available to other federal law enforcement authorities. *See* Indictment ¶ 53.

and less than $5,000 in cash at year end"; and that "all rents that he received from leases were paid by check." *Id*. ¶ 64.  On the basis of these transactions, Count Five charges Botti with structuring, in violation of 31 U.S.C. §§ 5324(a)(3) and 5324(d).  Counts Six and Seven charge Botti with making the previously described false statements to IRS agents on July 14, 2006, in violation of 18 U.S.C. § 1001(a)(2).

I will refer to the conspiracy alleged in Count Four as "the money conspiracy," and to Counts Four through Seven as "the money counts."

Botti moves to sever the money counts from the corruption counts for trial.  The government contends that all counts are properly joined in a single Indictment.

## II.  DISCUSSION

The propriety of joinder of the counts in the Indictment is governed by Rules 8(a) and 14(a) of the Federal Rules of Criminal Procedure.   I begin by discussing those rules separately.

### A.     Rule 8(a)

Rule 8(a) is captioned "Joinder of Offenses."  It provides that an indictment may charge a defendant in separate counts with 2 or more offenses if the offenses charged "are of the same or similar character, or are based on the same act or transaction, *or are connected with or constitute parts of a common scheme or plan*."  I have emphasized the only arguable basis for joining the corruption and money counts in this Indictment; and it is on this basis that the government contends joinder was proper.

In order to determine whether the money counts and the corruption counts against Botti are "connected with or constitute parts of a common scheme or plan," the Court "must look to the Indictment itself to determine the facts relevant to the severance motion," and disregard any "pre-trial representations not contained in the Indictment." *United States v. Schlegel*, No. 06-CR-

550, 2009 WL 706173 (E.D.N.Y. March 16, 2009), at *3 (citing and quoting *United States v. Rittweger*, 524 F.3d 171, 178 n.3 (2d Cir. 2008)).  The question in this case is whether a reading of the Indictment shows that the money counts are "sufficiently linked" to the corruption counts to allow joinder.  *Schlegel*, 2009 WL 706173, at *4 ("Count Eighteen is also insufficiently linked and does not arise from the remaining offenses in the Indictment."); *cf. United States v. Turoff* 853 F.2d 1037, 1044 (2d Cir. 1988) ("[T]here is a key link between the two offenses – one scheme stemmed from the other – and that link provides a sound basis for joinder under Rule 8(b).").[2]  To establish the requisite connection, speculation by the government or the Court will not suffice.  *See United States v. Halper*, 590 F.2d 422, 429 (2d Cir. 1979) ("Whatever connection exists, it is entirely too speculative to justify joinder of indictments.").  In *Halper*, the Second Circuit tested the existence *vel non* of a connection between the counts by analyzing the proof necessary to sustain them:

> In other words, no "connection" was shown sufficient to warrant the joinder of the indictments.  Commission of one of the offenses neither depended upon nor necessarily led to the commission of the other; proof of the one act neither constituted nor depended upon proof of the other.

*Id*.  Proper joinder is illustrated by *Turoff*, where the Second Circuit said in approving the joinder of non-tax and tax counts:

> Appellants and their cohorts manipulated the Hyfin accounts simultaneously to advance the Computer scheme and to accumulate unreported income.  The acts involved in each scheme have more than a temporal and spatial relationship.  Significantly, the tax fraud hinged on the fraudulent activities taken to enhance

---

[2]   There were multiple defendants in *Turoff*, so Rule 8(b) governed the propriety of joinder.  Rule 8(a) governs in this single-defendant case; but the requirement of connection is common to both.

> the Computer conspiracy.  Consequently, *the proof of one scheme is indispensable for a full understanding of the other*.

853 F.2d at 1044 (citation omitted) (emphasis added).

That cannot possibly be said about the money counts in the Indictment against Botti. Proof of the intricacies of the corruption counts is not "indispensable" to the government's proof that Botti structured money to avoid bank reporting regulations, or lied to IRS agents when they asked him how much cash he had.  The government acknowledged as much at oral argument.  In response to the Court's question, AUSA Kale said: "There's no need to prove corruption in order to prove structuring.  Our main point is that we would have to prove structuring though in a corruption trial." Tr. 64.

The soundness of counsel's latter assertion must be evaluated because it bears directly upon the propriety of joining the corruption and money counts in this Indictment.  Two considerations indicate that the proof of structuring is not even relevant, let alone indispensable, to the government's case against Botti for corruption.

The first consideration is timing.  The first structuring act alleged in the Indictment is a $9,500 cash deposit into one of Botti's accounts on June 19, 2006.  The corruption conspiracy count alleges that Botti began his efforts to corrupt Public Official # 1 in January 2002 and pursued those efforts assiduously and successfully from 2002 through July 2006.  A money structuring conspiracy conceived and first implemented in June 2006 cannot have any link whatsoever to Botti's corruption of a public official in 2002 and the years prior to 2006, let alone a link sufficiently strong to justify joinder.

The second consideration, related but separate, is Botti's conduct.  The Indictment alleges in detail the several manners in which Botti compensated Public Official # 1 for

betraying the Shelton citizenry's trust. Very few of them involve the payment of cash by Botti. The first specific allegation of corruption appears in ¶ 10 of the Indictment and is typical of most that follow: "In or about 2002, Botti sought to provide Public Official # 1 with construction services and materials at Public Official # 1's residence free of charge. Botti caused merchants who provided materials used at Public Official # 1's residence to send the bills to Botti. During 2002, Botti paid other contractors and a merchant for labor and materials used to provide construction services at Public Official # 1's residence." At a trial on the corruption counts, the government will prove that and other comparable conduct alleged during 2002-2005 or fail to do so; but it is obvious that money structuring in 2006 has nothing to do with that conduct, and the absence of proof of structuring will not deprive the government of any evidence it could use to prove that conduct and argue Botti's guilt on the corruption counts to the jury.

So we may put aside any thought that proof of structuring in 2006 has anything to do with proving corruption from 2002 though 2005. The only arguable link between the structuring and corruption counts, upon which the government seizes to justify joinder, relates to events in June and July, 2006 involving the 828 Project. The Indictment alleges at ¶¶ 27-35 that at a June 13 meeting, the P & Z Commission voted 4-2 against approving Botti's application; Botti then "provided Public Official # 1 with a monetary benefit" to induce him to support the project; Public Official # 1 interceded with the P & Z commissioners on Botti's behalf; at a meeting one week later, the P & Z Commission approved the project by a 4-2 vote; and "in or about 2006" (date unspecified), both to induce Public Official # 1's acts and to reward him for them, "Botti permitted Public Official # 1 to take cash from Botti's office safe."

Government counsel argued at the hearing that to prove that particular corrupt act by Botti, "it would be necessary to show that he had cash in his possession," and the fact that "Botti

deposited thousands and thousands of dollars into a bank the next day or a week later or something like that" would be probative of such possession. Tr. 63. The short answer to that concern is that the government can prove the dates and amounts of the deposits at the corruption trial and ask the jury to infer that it came from Botti's office safe. Even if the government needs to show that Botti *possessed cash*, it does not follow that the government needs to prove all the elements of *structuring*. More specifically, the government will not need to show that the deposits were made "for the purpose of evading the reporting requirements of [31 U.S.C.] section 5313(a)." 31 U.S.C. § 5324(a).

It also does not follow that the government needs to prove *all* of the cash transactions, many of which are temporally distant from the alleged cash bribes. There simply is not a sufficiently strong link between the Indictment's allegations of six months of money structuring and four prior years of unrelated corruption to justify the joinder of counts under Rule 8(a), especially when one considers the speculative nature of the link the government fashions. The government characterizes Botti's bank deposits, withdrawals, and allegedly false statements to IRS agents in July 2006 as part of a common scheme or plan to corrupt Shelton public officials. As to the latter, the government argues in its brief at 7:

> The only rational explanation for the defendant's falsehood is that he was conscious of criminality associated with his possession of the cash, including his very recent bribe to Public Official # 1, and that his falsehood was an attempt to thwart an investigation into his criminality, including his corrupt actions involving Public Official # 1.

This is rhetoric, not factual allegations in the Indictment, and questionable rhetoric at that: an equally rational explanation for Botti's telling IRS that he had very little cash was to evade taxes, particularly since (as the Indictment alleges at ¶ 41) Botti was not "informed by federal law

enforcement officers that he was under criminal investigation" until June *2007*, almost a year after the IRS agents came to call.

I conclude that based on the allegations in the Indictment, there is an insufficient connection between the corruption counts and the structuring counts to justify joinder of the counts under Rule 8(a).

**B.     Rule 14(a)**

For the reasons stated in Part II.A., I conclude that Rule 8(a) does not permit the joinder of the corruption and structuring counts. But if I am wrong in that conclusion, Rule 14(a) confers upon a trial court the discretion to sever even properly joined counts if "justice requires." As an alternative ground for decision, I exercise that discretion in this case.

Rule 14 is captioned "Relief from Prejudicial Joinder." Rule 14(a) provides in pertinent part:

> If the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, . . . or provide any other relief that justice requires.

"Rule 14 recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government." *Zafiro v. United States*, 506 U.S. 534, 538 (1993). *Zafiro* involved joinder of defendants under Rule 8(b), but its rationale applies equally to joinder of offenses under Rule 8(a).

Counsel for Botti seems to suggest in his briefs and oral argument that the government unfairly shoehorned the structuring counts into the Indictment to bolster its case on the corruption counts. I do not accept that criticism, if intended, but it is unquestionably true that the government's proof on a money structuring charge is relatively straightforward and

uncomplicated, quite unlike the evidentiary complexities inherent in untangling webs woven by those who practice to deceive or corrupt. Where the connection between the structuring and corruption counts is marginal at best, the increased potential of prejudice of joinder to Botti is that if during deliberations the jurors vote to convict on the structuring counts, they may be more inclined to convict on the corruption counts than they would if the offenses were tried separately.

The government discounts that possibility by stressing the jurors' ability to follow the trial judge's instructions that they should not act in such a fashion. Appellate judges have spoken on both sides of that question. Illustrations of both views abound. In *United States v. York*, 428 F.3d 1325, 1334 (11th Cir. 2005), the Eleventh Circuit rejected the defendant's claim that offenses should have been severed because "the jury was expressly instructed to consider each count in the Indictment separately and was further instructed that merely finding York guilty of one charged offense was not to influence its verdict as to the other charged offense." However, in *Halper*, 590 F.2d at 430-31, Judge Meskill cautioned that "[t]here is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively; that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all"; and in *United States v. Smith*, 120 F.2d 83, 85 (2d Cir. 1940), Judge Clark noted that "even when cautioned, juries are apt to regard with a more jaundiced eye a person charged with two crimes than a person charged with one."

Appellate judges are typically led to these reflections on appeals from a defendant's conviction after a trial during which something unfair may have happened. Trial judges, notwithstanding their more humble stations, are in the front lines of ensuring the fairness of a trial by preventing something unfair from happening in the first place. I perform that function in

this case by concluding that justice requires the severance of the corruption and structuring counts for trial, because a trial in which the corruption and structuring counts were tried together would work "substantial prejudice" upon the defendant.  *See United States v. Werner*, 620 F.2d 922, 928 (2d Cir. 1980).  Consequently, as an alternative basis of decision, and in the exercise of my discretion, I made an Order to that effect under Rule 14(a).


Dated: New Haven, Connecticut
           September 25, 2009

                                         */s/ Charles S. Haight, Jr.*
                                         Charles S. Haight, Jr.
                                         Senior United States District Judge