UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 3:08-cr-230 (CSH) |
| JAMES BOTTI, | MEMORANDUM OF DECISION |
| Defendant. | |

HAIGHT, Senior District Judge:

After a jury trial, Defendant James Botti was convicted of conspiracy to structure in violation of 18 U.S.C. § 371 and of structuring in violation of 31 U.S.C. § 5324 ("the structuring counts"). He was acquitted of two counts of making a false statement in violation of 31 U.S.C. § 5317. Defendant moved pursuant to Federal Rule of Criminal Procedure 33 for a new trial, contending that the evidence presented by the government at trial was insufficient to convict him on the structuring counts, and that "the Court erred in allowing a certain vendor witness to testify before the jury, and by declining to provide defendant's proposed special verdict form to the jury." [Doc. 212 at 1] Defendant also moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, on the basis that the evidence presented by the government at trial is insufficient to sustain his conviction. [Doc. 214]  By order dated January 19, 2010 [Doc. 234], the Court denied both motions. The order added that "the Court's reasons will be stated in an opinion to follow." This is that opinion.

**I.     STANDARDS OF REVIEW**

   **A.     Motion for Judgment of Acquittal**

Federal Rule of Criminal Procedure 29 provides that on a defendant's motion, the trial court

"must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." The Rule permits the court to reserve judgment on a motion for acquittal until the close of all the evidence, when the defendant may renew the motion. That procedure was followed in this case.

A motion for judgment of acquittal under Rule 29 focuses upon the sufficiency of the government's evidence in its case in chief to sustain a conviction. "Under Rule 29, a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003). Thus, "the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime is non-existent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) (citation and internal quotation marks omitted). The evidence must be viewed by the trial court "in the light most favorable to the Government and all permissible inferences drawn in the Government's favor." Jackson, 335 F.3d at 180 (citation omitted).

### B.     Motion for a New Trial

Federal Rule of Criminal Procedure 33 empowers the trial court to "vacate any judgment and grant a new trial if the interest of justice so requires." "Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority sparingly and in the most extraordinary circumstances." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (citation and internal quotation marks omitted). When exercising the discretion conferred by Rule 33, "the court is entitled

to weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992) (citation and internal quotation marks omitted). The majority in Ferguson summarized the standard as follows:

> The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. The trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict. The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. There must be a real concern that an innocent person may have been convicted.

246 F.3d at 134. That is the inquiry which the Court now undertakes.

## II. DISCUSSION

### A. Motion for a New Trial

#### 1. Sufficiency of Evidence

Botti contends that the Court should order a new trial because "the government offered insufficient evidence of intent, that is, the government failed to prove that the defendant acted with the intent to evade currency transaction reporting requirements." [Doc. 213 at 3].

The elements of structuring are: "(1) the defendant must, in fact, have engaged in acts of structuring; (2) he must have done so with knowledge that the financial institutions involved were legally obligated to report currency transactions in excess of $10,000; and (3) he must have acted with the intent to evade this reporting requirement." United States v. MacPherson, 424 F.3d 183, 189 (2d Cir. 2005). As to the first element, Botti does not deny on this motion that the deposits of cash into various banks, which the government characterizes as "acts of structuring," were in fact made. As to the second element, Botti does not deny that he had knowledge of the banks' reporting requirements; on the contrary, in support of this motion, Botti proclaims that he had that knowledge.

3

[Doc. 213 at 5] ("[T]estimony demonstrates that defendant was well aware that . . . cash deposits in excess of $10,000 [would] result in the filing of CTRs.")  Botti's motion focuses upon the third element.  He contends that the government's proof was insufficient to allow the jury to find that he acted with the intent to evade the reporting requirement.

The government's proof at trial included bank records subpoenaed from Naugatuck Valley Savings and Loan ("NVSL"), Webster Bank ("Webster"), and Sikorsky Federal Credit Union ("Sikorsky").  These bank records were generated from accounts maintained by James Botti or a company he controlled, or by his father, Peter Botti.  The government's theory of the case, which it argued to the jury, was that Peter Botti was a co-conspirator with his son James in the structuring conspiracy.[1]  The bank records show that between June 19, 2006 and November 28, 2006, 11 cash deposits were made into accounts at NVSL, three cash deposits were made into the account at Webster, and two cash deposits were made into the account at Sikorsky.  Of these sixteen[2] cash deposits, 10 were in the amount of $9,500, two were in the amount of $9,000, and one each was in the amount of $7,500, $6,000, $5,000, and $3,800 respectively. On no occasion was more than one cash deposit made at a particular bank on the same day, although on several occasions two deposits of just under $10,000 each were made at different banks on the same day.

---

[1] In a separate indictment, the government charged Peter Botti with conspiring to structure and structuring.  The bank transactions listed as overt acts in the indictment of Peter Botti were the same as the transactions the government proved during the trial of James Botti. Before the trial of James Botti began, Peter Botti pleaded guilty to the charges against him. The jury in the trial of James Botti was not made aware of the indictment of Peter Botti and the latter's plea of guilty.  At trial, the government did not offer a redacted transcript of Peter Botti's plea allocution as part of its proof against James Botti.

[2] The only other two transactions in the government's summary charts #1 & #2 [Doc. 218] are the July 2, 2006 cash payments at Sears of Kelly Botti's Discover credit card.

This pattern of making multiple deposits into multiple banks, most of them just under the $10,001 amount that would trigger the generation of a currency transaction report ("CTR") by a bank, falls within the Second Circuit's holding in MacPherson, 424 F.3d at 195, that "a pattern of structured transactions . . . may, *by itself*, permit a rational jury to infer that a defendant had knowledge of *and the intent to evade* currency reporting requirements." (emphasis added). On the present motion in the case at bar, Botti concedes knowledge of the reporting requirements but contends the government's proof was insufficient to prove his intent to evade them. Consequently, only the second prong of the holding in MacPherson applies to the case. On the authority of MacPherson and other Second Circuit cases, I charged the jury on the issue of Botti's intent to evade the reporting requirements:

> The ultimate fact of intent, though subjective, may be established by circumstantial evidence, based on the defendant's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence, and the rational or logical inferences that may be drawn from them.

(Charge to the Jury at 38.)

Botti's brief in support of his motion for a new trial does not refer to MacPherson and the obvious applicability of its quoted holding to this case. Instead, the brief quotes at length from defense counsel's cross-examination of two government witnesses, Botti's tax preparer Michael Plude, and his former spouse Kelly Botti, in an apparent effort to demonstrate that Botti was aware not only that single or cumulative cash deposits in excess of $10,000 at the same bank on the same day *would* result in the filing by that bank of a CTR, but also that multiple cash deposits of $10,000 or less at the same bank over a number of days *might* result in the filing by that bank of a suspicious

5

activity report ("SAR").[3] That awareness on Botti's part, his brief contends, precludes a finding by the jury that he acted with intent to evade the filing of CTRs:

> Given that Ms. Botti informed defendant that, even if he were to make multiple deposits of just less than $10,000, CTRs would be generated,[4] it simply cannot be concluded that defendant intended to evade the CTR requirements by making multiple deposits. Ms. Botti's testimony – and that of Mr. Plude – explicitly demonstrates that defendant knew making multiple deposits would not evade CTR requirements. In short, the testimony demonstrates conclusively that defendant would not have used "multiple deposits" to evade CTRs because he knew that financial institutions would file them as a result of those multiple deposits. . . . [W]here the available evidence indicates that defendant knew -- via his accountant and his former spouse who was a long-time bank employee and teller supervisor – that multiple deposits would generate CTRs, the evidence supporting defendant's structuring convictions is simply insufficient.

(Defendant's Brief at 10-11.) This argument is entirely unpersuasive. Taken to its logical conclusion, the more an individual knows about banks' cash transaction reporting requirements, the less likely he is to form the intent to evade them, so that if he knows everything he can intend nothing.

In any event, the Court is not convinced that the testimony definitively established Defendant's awareness of the suspicious activity reporting requirements imposed upon financial

---

[3] To the extent that the cross-examination of these government witnesses may be read to show Botti's awareness of the SAR regulations, his counsel was making an end run around the Court's *in limine* ruling that SARs could not be referred to in the evidence because SARs were irrelevant to the only regulatory charge the government made against Botti, namely, his intentional evasion of the CTR reporting requirements.

[4] This is an accurate statement only to the extent that it refers to multiple deposits totaling more than $10,000 at the same bank *on the same day*. By contrast, "Multiple deposits of just less than $10,000" in the same bank *over more than one day* might generate a SAR. Such conduct would not mandate a CTR. One suspects that counsel shied away from using the correct reference to an SAR because of the Court's *in limine* ruling. *See* fn. 3, *supra*.

institutions relating to amounts of $10,000 or less.[5] Assuming, however, that Defendant was indeed aware of the possibility that deposits of less than $10,000 *could* lead to the generation of a report in certain circumstances, such knowledge does not preclude Defendant's possessing intent to evade the *automatic* issuance of a CTR for cash deposits in excess of $10,000.

Defendant was aware of the banks' mandatory CTR requirements for amounts in excess of $10,000, as Defendant concedes. [Doc. 213 at 5] Evidence was also presented that, when viewed in the light most favorable to the government, shows the Defendant made or caused to be made sixteen large cash deposits at banks between June 19, 2006 and November 28, 2006, twelve of which were in amounts of $9,000 or $9,500. There was also evidence presented that James Botti made those deposits at multiple banks, sometimes on the same day, and through multiple agents, including Dan Witkins, Greg Fracassini, Peter Botti, and himself. A reasonable jury could have inferred that Defendant used multiple banks and multiple depositors in an attempt to keep the banks from becoming suspicious about the transactions and reporting them. Defendant may thus have hoped to escape the issuance of suspicious activity reports, but he knew he could not avoid the issuance of a CTR for amounts over $10,000. A jury could easily conclude beyond a reasonable doubt that he acted with specific intent to evade the CTR requirement when he made multiple deposits of amounts just under that reporting threshold.

Under the argument advanced by Botti, no defendant who was aware of both the CTR requirement that banks report currency transactions in excess of $10,000, and the SAR requirement

---

[5] For example, when counsel for Defendant asked Kelly Botti if she had told Peter Botti within James Botti's hearing that multiple transactions under $10,000 could lead to a report being filed, she responded, "I believe I might have." (Transcript of Kelly Botti Trial Testimony, Doc. 210 at page 93, line 21.)

that banks report certain activity as suspicious even if it involves amounts less than $10,000, could ever be convicted of the crime of structuring. According to this theory, mere knowledge that suspicious activity *might* be reported would preclude intent to avoid transactions that would *certainly* be reported. In truth, the fact that an individual may be aware that there is some chance that his structuring will be detected even though he keeps his deposits below $10,000 does not preclude his having acted with the intent to evade the CTR requirement that applies to deposits in excess of $10,000.

The "reporting requirement" which the structuring statute addresses and which Defendant must have knowledge of and specific intent to evade is the CTR, not any and all reporting requirements about which he may or may not have been aware. The government proved that Defendant knew of the $10,000 threshold and that he made or had others make for him multiple deposits in amounts just below $10,000 at multiple banks within a relatively short span of time. A jury can reasonably infer intent to evade the issuance of a CTR from such a pattern of cash deposits, even absent the other evidence of intent that was presented in this case. "The jury could have inferred from the fact that [the defendant] chose to carry out his currency exchanges in a series of small transactions over a number of days, rather than in a single transaction or several larger transactions, that he knew of the reporting requirements and was attempting to avoid them." MacPherson, 424 F.3d at 191 (quoting United States v. Nersesian, 824 F.2d 1294, 1314-15 (2d Cir. 1987)). As the government's evidence of defendant's intent to evade currency transaction reporting requirements was sufficient to support the conviction, Defendant's motion for a new trial on that basis is denied.

    **2.**    **Vendor Witness Testimony**

In further support of his motion for a new trial, Defendant contends that the testimony of

Idalina Neves, Stanislav Skripek and Albert Papa (the "Vendors") "was irrelevant to the structuring charges, particularly the issue of defendant's intent, and served only to confuse the jury and prejudice defendant," [Doc. 213 at 11] and should not have been admitted. At trial, Neves, Stripek and Papa testified that in 2007, Defendant paid them $40,000, $14,500, and $65,000, respectively, in cash in exchange for goods and services they provided to Defendant. The testimony of the Vendors was the subject of extensive pre-trial motion practice, where Defendant raised the arguments he presses here. [See Docs. 97, 106, 114, 122, 145, 159, 167, 170, 173 & 175.] After briefing and oral argument, the Court ruled that the vendor testimony was admissible as to both the structuring counts and the false statement counts. [Doc. 167 at 3] After Defendant sought reconsideration [Doc. 170], the Court clarified that, based upon the representations of the government at oral argument, only the testimony of Papa would be admissible with regard to the structuring counts. [Doc. 175] In this ruling, the Court stated that it would give the jury a limiting instruction to that effect. [Doc. 175 at 3] However, when the Court inquired of Defendant at trial whether he wished that this limiting instruction be given, he declined for strategic reasons, concerned that such an instruction would unduly draw the jury's attention to the testimony and its import.[6] Having declined, for a legitimate

---

[6] Jury Trial Day Four, November 5, 2009, 10:33:44 AM - 10:35:59 AM, William Dow, Esq., counsel for the Defendant:

The Court: With respect to the three vendors, as they've come to be thought of (I keep saying three tenors to myself) in the *in limine* practice, the government acknowledged that Stripek's testimony and Nevas' testimony would be relevant only to the false statement charges, but that Papa was different, that Papa was offered not only for the false statement charges, but also with respect to the structuring charge, and my understanding of that position on the part of the government is that Papa's situation is amplified or expanded by the remarks or statements that he said that Mr. Botti made to him.

Mr. Dow: Right.

9

reason, to avail himself of the limiting instruction, Defendant now renews the various arguments against admissibility of the vendor testimony, in effect again seeking reconsideration of the Court's prior rulings on this point. Upon reconsideration, however, the Court adheres to its prior rulings on the admissibility of the vendor testimony [Docs. 167 & 175], for the reasons stated therein.[7]

Defendant also asserts, incorrectly, that the Court failed to engage in a Rule 403 analysis with regard to the admissibility of the vendor testimony. Both the probative value and the purported

---

| | |
|---|---|
| The Court: | Now when that testimony came in, it came in in part. We didn't get any at all as I recall from the most recent encounter with Stripek, but with Papa, he testified as to what Mr. Botti said to him before going into the grand jury. That testimony came in. There was not a limiting instruction requested at the time. I'm not sure if I just forgot about it or fanned on it. But how does defense feel about it? Do you want me to say something about it now? |
| Mr. Dow: | You know, as I think it through, no, I don't. You can make the argument that, one, I should have requested it then. Two, I should request it now. I think it complicates the package. It highlights various aspects. I'm willing to deal with whatever, however the jury treats it. |
| The Court: | All right, well, that's fine, and I respect that decision, of course. That takes care of that. |
| Mr. Dow: | By the same token, preserving my earlier objections to the admissibility of the evidence. |
| The Court: | Oh, of course. |

[7] Specifically, the testimony of the Vendors regarding the large cash payments that Defendant made to them were admissible with respect to the false statement charges because Defendant's possession of cash "make[s] more probable than not the conclusion that Mr. Botti lied to the IRS on July 14, 2006, when he said he had 'no cash and less than $5,000 at any time during the year.'" [Doc. 175 at 3, quoting Redacted Indictment ¶ 33] The testimony of vendor Papa that Defendant paid him $65,000 in cash and instructed him not to tell anyone about it was admissible with respect to the structuring counts because it is probative of consciousness of guilt, and is not unduly prejudicial, because payment in cash is not illegal. Finally, if Defendant was indeed aware, as he suggests, of Papa's obligation to file a Form 8300 with the IRS related to the cash payment, then Defendant's instruction to Papa not to tell anyone is probative of Defendant's intent to structure, that is, to conceal his possession of cash from the government.

prejudicial effect of such testimony were raised for the Court in the briefing and at oral argument, and were considered by the Court in arriving at its ruling. "[A] mechanical recitation of the Rule 403 analysis is not required." United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992).

### 3. Special Verdict Form

Defendant submits that "a new trial is warranted because the Court erred in refusing to provide the jury with defendant's proposed verdict form containing special interrogatories directed to [the structuring count] since, absent such a form, it cannot be determined whether the jury was unanimous as to the same act of [structuring]." [Doc. 213 at 21] During the trial, Defendant submitted to the Court a proposed special verdict form [Doc. 179] and a supplemental request to charge regarding the requirement of jury unanimity with respect to the structuring charge. [Supplemental Request #3, Doc. 178] At trial, the Court gave the jury the following instruction:

> Ladies and gentlemen, I have already instructed you that you must be unanimous as to each element of each particular count.
>
> In order for you to find that the government has established guilt beyond a reasonable doubt in the context of structuring, the second element requires you to be unanimous that the defendant engaged in at least one act of structuring.
>
> As you know, there are many transactions in this case. I instruct you now that you must be *unanimous*, among yourselves, as to at least one of the transactions, that it was structured beyond a reasonable doubt.
>
> That is, this element is not satisfied if some of you conclude, beyond a reasonable doubt, that transaction A was structured, and some of you reach that conclusion as to transaction B. *For at least one transaction*, you must be unanimous that it was structured beyond a reasonable doubt.

(Charge to the Jury, Addendum at 65) (emphasis in original).[8] Thus, while the Court did not use

---

[8] On the issue of jury unanimity with regard to at least one structured transaction, the Court used this language, drafted by the Court and approved by both the government and

11

Defendant's special verdict form, it made it clear that, as to at least one transaction, the jury must be unanimous that it was structured beyond a reasonable doubt. "[J]uries are presumed to follow the Court's instructions." CSX Transp., Inc. v. Hensley, 129 S. Ct. 2139, 2141 (2009). There is no reasonable basis on which to believe that the jury failed to follow the Court's instructions in this case.

Furthermore, "[T]here is a 'historical preference for general verdicts,' and a 'traditional distaste for special interrogatories' in criminal cases." United States v. Bell, 584 F.3d 478, 484 (2d Cir. 2009) (quoting United States v. Coonan, 839 F.2d 886, 891 (2d Cir. 1988)); accord United States v. Ogando, 968 F.2d 146, 148 (2d Cir. 1992). Defendant has pointed to no cases holding that special verdict forms are required or even preferred for structuring charges. The Court's decision not to use a special verdict form does not entitle Defendant to a new trial.

### B. Motion for Judgment of Acquittal

As noted above, the standard for granting a motion for judgment of acquittal is more stringent than the standard for granting a new trial. Defendant makes substantially the same arguments in support of the motion for judgment of acquittal that he made in his motion for a new trial, particularly with regard to the purported insufficiency of the evidence to support his conviction. As the Court has rejected those arguments for the reasons stated in detail above, the motion for judgment of acquittal is hereby denied. See United States v. Milikowsky, 896 F. Supp. 1285, 1313 (D. Conn. 1994) ("This Court has already determined that the evidence presented by the government was sufficient for purposes of withstanding a motion for a new trial pursuant to Fed. R. Crim. P. 33. Because the Defendants must meet a standard significantly more stringent than that for a new trial

---

Defendant, rather than the language in Defendant's Supplemental Request to Charge.

in order to obtain a judgment of acquittal, the Defendants' motion for judgment must be denied, *a fortiori*.")

### III.     CONCLUSION

For the reasons stated herein, Defendant's motion for a new trial [Doc. 212] and motion for judgment of acquittal [Doc.214] are **DENIED**.

It is SO ORDERED.

Dated: New Haven, Connecticut, January 22, 2010.

                                                           */s/ Charles S. Haight, Jr.*
                                                          Charles S. Haight, Jr.
                                                          Senior United States District Judge