# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> JAMES BOTTI, <br><br> Defendant. | 3:08-cr-230 (CSH) |

## RULING ON MOTION FOR NEW TRIAL
## AND MOTION FOR JUDGMENT OF ACQUITTAL

HAIGHT, Senior District Judge:

After a jury trial, Defendant James Botti was convicted on April 1, 2010 of honest services mail fraud in violation of 18 U.S.C. § 1341 and 1346 (Count Three). The jury was unable to reach a unanimous verdict on traditional mail fraud, which was also charged in Count Three, or on charges of conspiracy to defraud the citizens of Shelton in violation of 18 U.S.C. § 371 (Count One) and bribery of a public official in violation of 18 U.S.C. § 666 (Count Two). The Court declared a mistrial as to those charges.

Defendant now moves pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal on the ground that the evidence presented by the government at trial is insufficient to sustain his conviction for honest services mail fraud. Alternatively, Botti moves pursuant to Rule 33 for a new trial, contending that the government's evidence was insufficient to convict him of mail fraud, that "the statute under which Defendant has been convicted - 18 U.S.C. § 1346 - is unconstitutionally vague on its face," and that "his Sixth Amendment right to a fair and impartial jury was compromised by irregularities in the jury process." [Doc. 339 at 1] For the reasons stated herein, Defendant's Motion for Judgment of Acquittal [Doc. 335] and Motion for a New Trial [Doc.

337] are DENIED.

## I. STANDARDS OF REVIEW

### A. Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 provides that on a defendant's motion, the trial court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." The Rule permits the court to reserve judgment on a motion for acquittal until the close of all the evidence, when the defendant may renew the motion. That procedure was followed in this case.

A motion for judgment of acquittal under Rule 29 focuses upon the sufficiency of the government's evidence in its case in chief to sustain a conviction. "Under Rule 29, a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). Thus, "the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime is non-existent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (citation and internal quotation marks omitted). The evidence must be viewed by the trial court "in the light most favorable to the Government and all permissible inferences drawn in the Government's favor." *Jackson*, 335 F.3d at 180 (citation omitted).

### B. Motion for a New Trial

Federal Rule of Criminal Procedure 33 empowers the trial court to "vacate any judgment and grant a new trial if the interest of justice so requires." "Generally, the trial court has broader

discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority sparingly and in the most extraordinary circumstances." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (citation and internal quotation marks omitted). When exercising the discretion conferred by Rule 33, "the court is entitled to weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992) (citation and internal quotation marks omitted). However, it is "only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment," and the test is "whether it would be a manifest injustice to let the guilty verdict stand." *Id*. at 1414 (citations and internal quotation marks omitted). *See also Ferguson*, 246 F.3d at 134:

> The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. The trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict. The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. There must be a real concern that an innocent person may have been convicted.

That is the inquiry the Court now undertakes.

## II. DISCUSSION

### A. Motion for a New Trial

#### 1. Sufficiency of Evidence

Botti contends that the Court should order a new trial because "the government offered insufficient evidence that defendant devised a scheme or artifice to deprive the citizens of Shelton of the intangible right to the honest services of their public officials, with the specific intent to do so." [Doc. 339 at 4-5]

3

The Court charged the jury:

> In order to prove the defendant guilty of mail fraud, the government must prove each of the following elements beyond a reasonable doubt:
>
> <u>First</u>, that the defendant devised a scheme or artifice. There are two types of schemes charged in Count Three of the indictment. One is a scheme or artifice for obtaining money or property by materially false and fraudulent pretenses, representations or promises, as alleged in the indictment. The other is a scheme or artifice to deprive the citizens of Shelton of the intangible right of the honest services of their public officials, as alleged in the indictment.
>
> <u>Second</u>, that the defendant knowingly and willfully participated in the scheme or artifice, with knowledge of its fraudulent nature and with specific intent; and
>
> <u>Third</u>, that in execution of that scheme or artifice, the defendant used or caused the use of the mails as specified in the indictment.

Court's Charge [Doc. 311 at 37].

Botti's argument that the government failed to prove these elements depends principally upon the effect he ascribes to the fact that the jury hung on other charges in the indictment. In order fully to comprehend and evaluate that argument, it is necessary to consider the special verdict form the jury used to return its verdict.

Count One charged Botti with conspiring to commit mail fraud. Count Three charged him with the substantive offense of mail fraud. I quoted *supra* the charge to the jury on Count Three, which stated with respect to the first element, the existence of a fraudulent scheme: "There are two types of schemes charged in Count Three of the indictment. One is a scheme or artifice for obtaining money or property by materially false and fraudulent pretenses, representations or promises, as alleged in the indictment. The other is a scheme or artifice to deprive the citizens of Shelton of the

4

intangible right of the honest services of their public officials as alleged in the indictment." *Id.* In order to ensure the requisite unanimity on a guilty verdict, the special verdict form required the jury to render a separate verdict on each of these two schemes. Thus the special verdict form stated: "As to Count One of the indictment, we the jury unanimously find the defendant James Botti (check one):" followed by two boxes reading "Not Guilty" or "Guilty." If the jury found Botti guilty on Count One, the verdict form additionally instructed them as follows:

> If you find the defendant guilty on Count One, do you unanimously find that:
>
> A. James Botti engaged in a conspiracy to deprive the citizens of Shelton of the intangible right of the honest services of their public official or officials (check either no or yes).
>
> _____ No                     _____ Yes
>
> B. James Botti engaged in a conspiracy to obtain money or property by means of materially false or fraudulent pretenses, representations or promises (check either no or yes).
>
> _____ No                     _____ Yes

Special Verdict Form [Doc. 315 at 1]. The same format was used to structure the verdict on Count Three, the substantive mail fraud charge. No such complexities arose with respect to Count Two, charging Botti with bribery in violation of 18 U.S.C. § 666, which simply asked the jury to indicate whether they found him not guilty or guilty.

The jury returned a unanimous verdict of guilty on Count Three and, answering sub-question A in the affirmative, found unanimously that Botti engaged in a scheme to deprive the Shelton citizens of the honest services of their public official(s). The jury reported that it could not reach a unanimous verdict on any other charge: either of the two schemes alleged in Count One, mail fraud

conspiracy; Count Two, bribery; or the scheme to obtain money or property, described in sub-question B of the verdict form for Count Three, substantive mail fraud.

Botti attempts to use the jury's failures to reach decisions on these charges to support his post-trial motions by contending that Count One "alleged a specific conspiracy between defendant and [Shelton] Mayor Mark Lauretti, and such was the focus of the government's evidence and argument at trial," and that Count Two "alleged, and the government argued at trial, that defendant bribed Mayor Mark Lauretti to use his position and authority to assist defendant in obtaining approval of the 828 Project." [Doc. 339 at 7] "Thus it is clear," Botti says, "that defendant's alleged relationship with Mayor Lauretti was the linchpin, the fulcrum, around which the conspiracy and bribery charges revolved. The jury deadlocked on these charges. The jurors could not agree that the government had proved this allegedly illicit relationship beyond a reasonable doubt." *Id*. Botti's argument continues:

> *A fortiori*, this relationship cannot be the foundation for the charge against defendant in Count Three alleging mail fraud via a scheme to defraud Shelton's citizens of their right to honest services. The only reasonable conclusion to be drawn is that, were it otherwise, the jury would also have deadlocked on Count Three. Thus, in exploring whether the government adduced sufficient evidence to support the jury's verdict on Count Three, it is necessary to review the trial evidence to determine whether the government presented adequate evidence that defendant deprived the citizens of Shelton of the honest services of "other public officials" in connection with the 828 Project (the document approving which constituted the alleged mailing in this case).

*Id*. at 7-8. The government's evidence included favors Botti allegedly conferred upon three Shelton Planning and Zoning Commissioners, which Botti argues is insufficient, viewed separately or together, to sustain a guilty verdict on the honest services charge in Count Three.

Botti is correct that the government's case against him relied principally upon his relationship

6

and interactions with Mayor Lauretti.[1]  However, it does not follow that the jury's failure to reach a verdict on the conspiracy and bribery charges undermines Botti's conviction of honest services mail fraud.  In its Rule 33 analysis of the evidence, the Court can draw no conclusions from the jury's inability to reach a unanimous verdict on charges other than that of conviction.  A hung jury is a nonevent for such purposes.

The Supreme Court made that plain in *Yeager v. United States*, 129 S.Ct. 2360 (2009), where the defendant was indicted for securities and wire fraud, conspiracy, insider trading, and money laundering.  The jury acquitted defendant on the fraud counts but failed to reach a verdict on the insider trading counts.  The Supreme Court held, reversing the Fifth Circuit, that double jeopardy precluded the retrial of defendant on the hung counts.  The Court of Appeals had held "that the hung counts must be considered to determine what issues the jury decided in the first trial," and reasoned that if "the jury found that [petitioner] did not have inside information, then the jury, acting rationally, would also have acquitted [him] of the insider trading accounts."  129 S.Ct. at 2367 (quoting the Court of Appeals).  That is the same type of exercise Botti asks this Court to perform and the same method of analysis he employs in his brief.  In *Yeager,* the Supreme Court rejected

---

[1] As the prosecutor stated in his opening argument:

> The evidence in this case will show that James Botti believed the town where he lived and worked and developed projects, Shelton, Connecticut, was crooked, was corrupt.  And that in order to get anywhere in that town, you had to pay off the mayor, a man named Mark Lauretti. . . . James Botti and Mark Lauretti were partners in crime.  They were partners in a conspiracy, a conspiracy to defraud the citizens of Shelton, Connecticut, of their right to honest services of their elected officials.

Trial transcript for March 8, 2010 at 31 & 34.  In fact, Lauretti has not been indicted for any conduct related to the events described in the indictment against Botti.

such an approach, using language worth quoting at some length:

> The Court of Appeals' issue-preclusion analysis was in error. A hung count is not a relevant part of the record of the prior proceeding. Because a jury speaks only through its verdict, its failure to reach a verdict cannot – by negative implication – yield a piece of information that helps put together the trial puzzle. . . . Unlike the pleadings, the jury charge, or the evidence introduced by the parties, there is no way to decipher what a hung count represents. Even in the usual sense of "relevance," a hung count hardly "make[s] the existence of any fact . . . more probable or less probable." Fed. R. Evid. 401. A host of reasons – sharp disagreement, confusion about the issues, exhaustion after a long trial, to name but a few – could work alone or in tandem to cause a jury to hang. To ascribe meaning to a hung count would presume an ability to identify which factor was at play in the jury room. But that is not reasoned analysis; it is guesswork.
>
> Such conjecture about possible reasons for a jury's failure to reach a decision should play no part in assessing the legal consequences of a unanimous verdict that the jurors did return.

129 S.Ct. at 2367-68 (footnotes omitted).

*Yeager* presented the claimed meaning of a hung count in determining the effect of an acquitted count for double jeopardy purposes. Botti's case presents the claimed meaning of hung counts in determining the effect of a count of conviction for Rule 33 purposes. But there is no principled difference between the two. A hung count means nothing in post-trial analyses. It cannot be made to mean anything. Botti's effort to ascribe significance to the hung counts can play no part in the Court's Rule 33 evaluation of the trial evidence.

That being so, the Court must consider all the trial evidence. Botti's motion asks me to consider only the evidence relating to Botti's interactions with three Planning and Zoning Commissioners and the conduct of those individuals. His request is understandable, since if granted it would sweep away the vast majority of the government's proof. But *Yeager* precludes this

8

approach.  In determining whether it would be a manifest injustice to let stand Botti's conviction on the honest-services charge, I must consider the substantial body of evidence relating to Botti's interactions with Mayor Lauretti and the conduct of both these individuals.

Before proceeding, it is important to note that Lauretti, the sitting mayor of Shelton, has publicly and repeatedly asserted that he has done nothing wrong.  More to the point, the government has not indicted Lauretti for bribery or any other crime, notwithstanding the allegations it has made in this case.  Accordingly, nothing in the following discussion should be interpreted as intimating any view by the Court that Lauretti is guilty or innocent of anything.  My sole function on this motion is to factor the trial evidence involving Lauretti into a Rule 33 evaluation in Botti's case, and then decide, on all the evidence, whether Botti's conviction can stand.

That said, the Rule 33 question in this instance is not a close one.  The government's evidence included proof that as early as 2001, Botti paid for trips to Florida for Mayor Lauretti and his family.  Botti's accountant cautioned him that a developer should not confer such benefits upon the mayor of the city in which the developer required permission to develop property, but Botti continued his *largesse* to Lauretti.  Botti paid other contractors about $20,000 for renovations to Lauretti's home.  He did not bill Lauretti for this work for two years after the work was performed.  Five days after former Connecticut Governor John Rowland was publicly exposed for having accepted free home repairs, Botti sent Lauretti a bill for the renovations.  Botti had previously instructed his secretary to backdate a bill for the entire cost of the work, but not mail it to the mayor.  The jury could infer from Botti's conduct that he intended to curry favor with the mayor by paying for the renovations to the mayor's home, and then sought to conceal or disguise those payments when the Rowland scandal shone an unwelcome searchlight on contractors doing favors for

9

politicians.

In addition, as the government asserts in its brief, the evidence showed that during the succeeding years Botti "continued to provide benefits to the mayor, including fencing, personally providing and operating a backhoe to clear shrubs on the mayor's property, free storage of the mayor's Mercedes in the defendant's shed, and ultimately, up to $80,000 in cash." [Doc. 345 at 5] The rendition by Botti to Lauretti of these additional favors, with the exception of the cash payments, are proved by evidence from independent and disinterested sources. The evidence of cash payments takes the form of statements that two government witnesses, Andre Czaplinski and Leon Sylvester, testified that Botti made to them. Botti's out-of-court statements were received for their truth under the admissions exception to the hearsay rule. Fed. R. Evid. 401(d)(2). Defense counsel challenged the credibility of these witnesses during cross-examination.

According to Sylvester's testimony, Botti told him that shortly before his 828 Bridgeport Avenue project ("the 828 Project"), a major commercial development in Shelton upon which the trial principally focused, was coming up for approval by the Planning and Zoning Commission ("P & Z"), Lauretti came to Botti's office and took $30,000 from his safe, saying as he departed: "This will help you." Sylvester told Botti that he didn't believe him. Several days later, Botti pursued the subject with Sylvester, insisting that he gave Lauretti cash and saying that he had surveillance cameras in his office to prove it. The defense called a contractor familiar with Botti's office to testify that there were no cameras in it, and argued that Botti's statements about cash, if made, were nothing more than hyperbole, bombast and exaggeration. I permitted defense counsel to elicit from witnesses, over the government's objection, Botti's reputation for verbal flights of fancy. Based on the evidence presented, the jury would have been within its rights to conclude either that cash payments were or

were not made, as this was largely a credibility determination. However, it was not necessary for the jury to conclude that cash payments had been made to order for the conviction to stand, as the actual payment of a bribe is not an essential element of honest services mail fraud.

The trial evidence concerning Mayor Lauretti's conduct during the runup to the P & Z hearing on Botti's 828 Project in June 2006 is also probative of Botti's guilt of honest services mail fraud. Botti needed Commission approval by a particular date to obtain bank funding for the project. Lauretti telephoned a city official and had the matter added to the next P & Z meeting agenda, an intercession with no discernible beneficiary other than Botti. Amid indications that the five-member Commission might reject the 828 Project, the mayor requested that Allan Cribbins, the P & Z chairman at that time, telephone him, whereupon he asked Cribbins to contact other commissioners in an effort to build up a majority in favor of the project. Notwithstanding the defense's suggestion that such requests were common, Cribbins testified that the 828 Project was the only instance in which Lauretti asked him "to build a consensus in favor of a project and visit a commissioner" to obtain support for a project. Trial transcript for March 15, 2010 at 111.

There was also a considerable body of evidence that during this time, Botti bestowed favors upon P & Z commissioners and a Shelton building official through the mediums of not charging for home renovations; restaurant gift certificates; fruit gift boxes; directing his company's Christmas party business to restaurants in which a public official had an interest and overpaying for the occasion; and arranging a discount for the building official's purchase of a vehicle through Botti's complex negotiations with a car dealership. Botti argued at trial and argues now that the City of Shelton Ethics Code does not forbid modest gifts to public officials. But that does not preclude a finding that gifts were given for an illicit purpose, as two P & Z commissioners recognized: one

11

commissioner returned her gift to Botti with a note that it was inappropriate, and another commissioner testified that he wished he had done so, noting that he redeemed himself by not redeeming the restaurant gift certificate.

A pattern emerged of Botti rewarding P & Z commissioners who had voted in favor of the 828 Project, which was approved by a majority, and disregarding a commissioner voting against it. In that vein, Botti asked Leon Sylvester, a P & Z commissioner who had recused himself from the 828 Project vote after Botti did not bill him for renovations, to urge another commissioner, a restaurant owner named Daniel Orazetti, to vote in favor of the project. Sylvester met with Orazetti at his restaurant and requested Orazetti to vote in favor; Orazetti asked Sylvester to tell Botti that his restaurant hosts Christmas parties; Sylvester told Orazetti not to mention their meeting to anyone; Orazetti voted in favor of the 828 Project at the P & Z hearing considering it; and Botti held his 2006 Christmas party at Orazetti's restaurant, the first time he had patronized that establishment.

I have not referred to all the trial evidence, which the government's briefs describe in greater detail. At trial, Botti did not object to this evidence or challenge the credibility of the witnesses testifying to it. He does not do so now on his Rule 33 motion. Rather, Botti maintains that his interpretation of the hung counts requires me to disregard most of this evidence. As stated *supra*, the Supreme Court in *Yeager* precludes that argument.

There is ample evidence that Botti extended numerous favors to several Shelton public servants for the purpose of obtaining in return favorable action on his development applications, particularly the 828 Project, in derogation of the Shelton citizenry's right to their public servants' honest services. Viewing the government's trial evidence cumulatively, and not particular incidents in isolation, I conclude that the evidence was sufficient to support Botti's conviction for honest

12

services mail fraud. Letting the jury's verdict stand does not work a manifest injustice. Accordingly, Botti's motion under Rule 33 for a new trial will be denied.

### 2. 18 U.S.C. § 1346 as Unconstitutionally Vague

Defendant contends that "the statute under which defendant has been convicted – 18 U.S.C. § 1346 – is unconstitutionally vague on its face under the Sixth Amendment, both for its lack of fair notice and for encouraging arbitrary enforcement by the Government." [Doc. 339 at 1]

After Botti's post-trial motions under Rules 29 and 33 had been fully briefed and while decisions were pending, the Supreme Court decided *Skilling v. United States*, 130 S.Ct. 2896 (2010), and two companion cases, *Black v. United States*, 130 S.Ct. 2963 (2010), and *Weyhrauch v. United States*, 130 S.Ct. 2971 (2010). The petitioners in each case challenged the constitutionality of § 1346. *Skilling*, the Court's principal opinion, holds that § 1346 is unconstitutionally vague in some circumstances but not in others. This Court directed the government and Botti to submit supplemental briefing on the effect, if any, of *Skilling* on this case, and deferred decision on the pending motions in the interim. Those supplemental briefs were filed.

In *Skilling,* the Supreme Court rejected both Skilling's contention that § 1346 was totally unconstitutional and the government's contention that it was totally constitutional. Instead, the Supreme Court adopted a middle ground, holding that § 1346 is constitutional because its reach is limited to "bribery and kickback schemes." 120 S.Ct. at 2907 ("In proscribing fraudulent deprivations of 'the intangible right of honest services,' § 1346, Congress intended at least to reach schemes to defraud involving bribes and kickbacks. Construing the honest-services statute to extend beyond that core meaning, we conclude, would encounter a vagueness shoal. We therefore hold that § 1346 covers only bribery and kickback schemes. Because Skilling's alleged misconduct entailed

13

no bribe or kickback, it does not fall within § 1346's proscription.").

Botti now argues that "the Supreme Court's decision in *Skilling* warrants defendant's acquittal, or in the alternative, a new trial because it is unclear from the jury charge and verdict form whether the jury convicted defendant of the honest services mail fraud charge on a bribery theory, *which would be valid under § 1346*, or whether the jury convicted him under a non-bribery theory, which misconduct *Skilling* has declared to be outside § 1346's province." [Doc. 372 at 3] (emphasis added). Botti acknowledges, as he must in light of *Skilling*'s unambiguous statement that § 1346's inclusion of bribery is constitutional, that his conviction on the honest services mail fraud charge under a bribery theory would be valid. His contention is that the jury charge improperly invited the jury to convict him on either a constitutional bribery theory *or* some other, unconstitutional theory, and that the verdict form does not reveal which theory the jury adopted. Stated otherwise, Botti contends that it is possible that the jury impermissibly convicted him under some non-bribery theory, and that it is unclear whether or not it did so.

The government seeks to deflect this contention by arguing, first, that Botti's failure to object to the jury charge at the time waives any post-trial criticism, and second, that any defect in the charge would be harmless error. Neither argument is persuasive. The charge was fashioned by counsel and the Court before the Supreme Court decided *Skilling*. Nobody knew what the Court was going to hold. Defense counsel cannot be faulted for failing to criticize the charge on the basis of what the Court *might* say in *Skilling*. The present question is whether what the Court *did* say in *Skilling,* applied retroactively as it undisputedly must be, transforms a charge and verdict form, proper when given at trial, into improper instruments requiring that the jury verdict be set aside. If *Skilling* had that effect, the resulting error at the trial court level would not be harmless.

Botti contends that a fatal lack of clarity derives from Court's charge to the jury regarding the definition of honest services, which stated in its entirety:

> As I stated earlier, the government has charged two types of scheme or artifice in the indictment. One is a scheme or artifice for obtaining money or property by materially false or fraudulent pretenses, representations or promises. The second is a scheme or artifice to deprive the citizens of Shelton of the intangible right of the honest services of their public officials. Intangible rights are rights to which an individual or entity is entitled based on law or custom and practice. Let me explain the term "honest services."
>
> A public official or local government employee owes a duty of honest, faithful and disinterested service to the public and to the government that he or she serves. The public relies on officials of the government to act for the public interest, not for their own enrichment. A government official who uses his or her public position for self enrichment breaches the duty of honest service owed to the public and the government. So, for instance, a public official who accepts a bribe or corrupt payment breaches the duty of honest, faithful, and disinterested service. While outwardly appearing to be exercising independent judgment in his or her official work, the public official instead has been paid privately for his or her public conduct. Thus, the public is not receiving the public official's honest and faithful service to which it is entitled.

Court's Charge, [Doc. 311 at 41]. Botti takes issue in particular with the charge's use of the phrase "for instance" before stating that "a public official who accepts a bribe or corrupt payment breaches the duty of honest, faithful, and disinterested service." He argues that this incorrectly suggested to the jury that bribery was merely an illustration of one manner by which the public's intangible right to honest services could be violated, thereby inviting the jury to develop and convict him on some other – and unconstitutional under *Skilling* - theory of an honest services violation. See Def.'s Supplemental Brief [Doc. 374] at 14 ("In sum, the charge did not limit self-enrichment to bribery as required by *Skilling*, but rather referred to bribery as illustrative.").

15

There is no substance to this argument. Botti nowhere suggests what this alternative, constitutionally impermissible theory of wrongdoing might be. That is not surprising, since there is no evidence in the record of any sort of wrongdoing other than Botti's bribery of public officials. The indictment did not charge any alternative theory. Neither the government nor the defendant argued any other theory at trial. Neither the jury charge nor the verdict form suggests any other theory. There were no facts, evidence or testimony presented at trial that could reasonably support or give rise to an alternative theory. Botti suggests none. To conclude that the jury might have convicted the Defendant on some theory of honest services mail fraud other than the bribery theory suggested in the jury charge would require pure speculation on the Court's part, and an assumption that the jury acted in an unreasonable manner in contriving some grounds for conviction other than the obvious one clearly supported by the record. The Court declines to engage in such speculation or question the judgment of a jury which was, from all indications, careful and thorough in its consideration of the case.

Botti's contention might have some force if the charge's "for instance" sentence had been followed by a second "for instance" description of conduct, this one not involving bribery, which set forth an alternative manner by which a public official might breach his duty of honest service. But I did not do so, because there was no trial evidence of any methodology on Botti's part other than bribery. A trial judge seeks by his charge to assist the jurors in understanding the factual issues arising out of the evidence that they must resolve, and the law they are to apply in doing so. It would be inappropriate for the judge to include in his charge a factual hypothesis for which there is no evidence. For that reason, a trial judge will not give a defense-requested entrapment charge unless there is evidence in the record from which a rational jury could find that the defendant was in fact

entrapped. In the case at bar, there is no evidence in the record upon which the jury could have found any theory of honest services deprivation other than Botti's bribing public officials.

Botti also objects to the charge's use of the word "self-enrichment." Specifically, he objects that "the court's instructions on honest services included both self-enrichment and bribery in the same charge." [Doc. 374 at 12] He appears to contend that mere use of the term "self-enrichment" suggested to the jury that it could convict Botti based on a broad spectrum of conflict of interest and self-dealing theories of honest services mail fraud, in violation of *Skilling*'s holding that § 1346 is limited to "bribery and kickback schemes." 120 S.Ct. at 2907. However, bribery is obviously a vehicle for self-enrichment, so the mere use of that word does not cause the charge to cross the line into *Skilling*-prohibited territory when there is absolutely no basis in the record to support any theory undergirding Botti's honest services mail fraud conviction other than bribery.

For the foregoing reasons, I conclude that the Supreme Court's decision in *Skilling* does not entitle Botti to a judgment of acquittal or a new trial.

### 3. Purported Jury Irregularities

Botti maintains that "the totality of the circumstances regarding the jury process in this case compels the conclusion that defendant was deprived of the fair and impartial jury to which he is entitled under the Sixth Amendment." [Doc. 339 at 17] Specifically, Defendant contends that he is entitled to a new trial because the trial was "beleaguered by irregularities - including the jury's exposure to extraneous material, juror bias, premature deliberations and allegations of threatening behavior between jurors." *Id.* The Court addressed these same allegations in a June 8, 2010 ruling

17

denying Defendant's Motion for Permission to Interview Jurors.[2] *United States v. Botti*, 2010 WL 2326043 (D. Conn. June 8, 2010). That Ruling is incorporated by reference herein. For substantially the same reasons that the Court concluded that the purported jury irregularities did not merit additional investigation in the form of jury interviews, it now concludes that they did not deprive Defendant of a fair trial, and do not entitle him to a new trial.

      **B.**      **Motion for Judgment of Acquittal**

As noted above, the standard for granting a motion for judgment of acquittal is more stringent than the standard for granting a new trial. Defendant makes substantially the same arguments in support of the motion for judgment of acquittal that he made in his motion for a new trial, particularly with regard to the purported insufficiency of the evidence to support his conviction. As the Court has rejected those arguments for the reasons stated in detail above, the motion for judgment of acquittal is hereby denied. *See United States v. Milikowsky*, 896 F. Supp. 1285, 1313 (D. Conn. 1994) ("This Court has already determined that the evidence presented by the government was sufficient for purposes of withstanding a motion for a new trial pursuant to Fed. R. Crim. P. 33. Because the Defendants must meet a standard significantly more stringent than that for a new trial in order to obtain a judgment of acquittal, the Defendants' motion for judgment must be denied, *a fortiori*.").

**III.**    **CONCLUSION**

For the reasons stated herein, Defendant's Motion for a New Trial [Doc. 337] and Motion

---

[2] Because the instant motions by Defendant for a new trial and for judgment of acquittal were filed prior to the Court's ruling on Defendant's motion to conduct jury interviews, neither Defendant's post-trial motions nor the government's responses reference that ruling, despite its clear relevance to the issues raised herein regarding alleged jury improprieties.

for Judgment of Acquittal [Doc. 335] are DENIED.

It is SO ORDERED.

Dated: New Haven, Connecticut, September 8, 2010.

*/s/ Charles S. Haight, Jr.*

Charles S. Haight, Jr.
Senior United States District Judge